IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLOS ZUNIGA, | : | Civil No. 3:17-cv-792 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| CHAMBERLIN, et al., | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff, Carlos Zuniga, an inmate formerly confined at the Allenwood Federal

Correctional Institution in White Deer, Pennsylvania ("FCI-Allenwood"), commenced this

*Bivens*[1], 28 U.S.C. § 1331, civil rights action on May 4, 2017. (Doc. 1). Named as

Defendants are George Chamberlin, Joe Lincalis, B. Sudul, Jim Lyons, S. Prutzman,

Steven Spaulding, and Kendahl Gainer. Presently pending before the Court is Defendants'

motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) or, in the alternative, for

summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 18). For the

reasons set forth below, the Court will grant the motion for summary judgment.

## I.    Summary Judgment Standard of Review

When a party moves to dismiss, but where "matters outside the pleadings are

presented to and not excluded by the court, the motion must be treated as one for summary

---

[1]    *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

judgment under Rule 56." FED. R. CIV. P. 12(d). Typically, when a court converts a motion to dismiss into a motion for summary judgment under Rule 56, notice must be given to all parties of the court's intent to do so. *Id.*; *Garcia v. Newtown Twp.*, 2010 WL 785808, at \*3 (E.D. Pa. 2010). However, if a motion to dismiss has been filed with an alternative request for summary judgment, the Third Circuit Court of Appeals has found that the alternative filing is sufficient to "place the parties on notice that summary judgment might be entered." *Latham v. United States*, 306 F. App'x 716, 718 (3d Cir. 2009) (citing *Hilfirty v. Shipman*, 91 F.3d 573, 578-79 (3d Cir. 1996)). Accordingly, the Court will treat Defendants' filing as a motion for summary judgment.

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

2

Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of

3

material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## II.  *Bivens* Standard

A *Bivens* action is the federal counterpart to an action filed under 42 U.S.C. § 1983.

*See Paton v. LaPrade*, 524 F.2d 82 (3d Cir.1975); *Farmer v. Carlson*, 685 F.Supp. 1335,

1338 (M.D. Pa. 1988). Section 1983 of Title 42 of the United States Code offers private

citizens a cause of action for violations of federal law by state officials. *See* 42 U.S.C. §

1983. The statute provides, in pertinent part, as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

*Id.; see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95

F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the

violation of a right secured by the Constitution and laws of the United States, and must

show that the alleged deprivation was committed by a person acting under color of state

law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## III.  Allegations of the Complaint

Zuniga alleges that beginning on September 20, 2014, while confined at FCI-Allenwood, Paisa gang members harassed him and subjected him to extortion because he refused to collect gambling debts from other inmates. (Doc. 1, p. 11). On January 22, 2015, Zuniga allegedly reported his problems with the Paisa inmates to Defendants Chamberlin and Lincalis. (Id.). Chamberlin and Lincalis informed Zuniga that they would investigate the matter. (Id. at p. 12). Zuniga alleges that Defendants Chamberlain and Lincalis failed to report or document his January 22, 2015 complaints. (Id. at p. 14). He further claims that Defendants Chamberlin and Lincalis disclosed that confidential information to other inmates. (Id.). As a result, Zuniga alleges that he was threatened, harassed, and humiliated, forced to pay increased extortion fees, and ultimately assaulted by two Paisa inmates on May 14, 2015. (Id. at pp. 12-13).

Zuniga claims that while in recreation on May 25, 2015, Paisa inmates threatened to kill him if he did not transfer to another institution. (Id. at pp. 13-15). As a result of these death threats, Zuniga reported to the lieutenant's office and requested protection. (Id. at p. 15). The staff member to whom he reported the threats ordered him to return to his housing unit. (Id.). Zuniga refused to return to his housing unit and received an incident report for refusing to obey an order. (Id.). Zuniga was then placed in the Special Housing Unit ("SHU") for his protection. (Id.).

On June 1, 2015, Zuniga underwent an x-ray which revealed that he suffered injuries

to his ribs and right shoulder. (*Id.* at p. 15).

Zuniga alleges that between May 25 and November 12, 2015, Defendants Lyons, Prutzman, and unnamed staff members observed injuries he sustained in the May 14, 2015 assault, but failed to document the assault. (*Id.* at pp. 15-17). On November 24, 2015, Zuniga claims that he sent a letter to Warden Spaulding, but did not receive a response and the Warden did not report his complaints or discipline the inmates who assaulted him. (*Id.* at p. 17).

On November 12, 2015, Zuniga allegedly asked Defendants Gainer and Prutzman about a transfer to another institution. (*Id.* at p. 18). Defendant Gainer allegedly informed Zuniga that he was not going anywhere and he was staying in the SHU. (*Id.*). Zuniga claims that he was subjected to "hard time" in the SHU in violation of the Eighth Amendment. (*Id.* at p. 18).

On or about January 3, 2016, Zuniga was designated for transfer to a different institution as a safety/security concern. (*Id.*).

Zuniga alleges that Defendants violated his constitutional rights by placing him at risk of harm by failing to report his complaints and failing to take action against the Paisa inmates, subjecting him to unlawful conditions of confinement by placing him in the SHU for seven months, and refusing his request for a transfer to a different institution. (*Id.* at pp. 20-22).

Zuniga also asserts a retaliation claim against unnamed staff members in the
Northeast Regional Office and the Central Office based on the rejection of his administrative
remedies. (*Id.* at pp. 3-8, 19).

For relief, Zuniga requests damages in the total amount of $2,000,000.00. (*Id.* at
23).

## IV.     Statement of Undisputed Facts

With the above summary judgment standard of review in mind, the following are the
facts material to the present motion, drawing any reasonable inferences in favor of the
non-moving party, Zuniga.

In the ordinary course of business, computerized indices are kept of requests for
administrative review filed by inmates. (Doc. 24, Statement of Material Facts ("SMF"), ¶ 9;
Doc. 38-4, Counter Statement of Material Facts). A search of BOP records was conducted
to determine whether Zuniga exhausted the administrative process as to his present claims.
(SMF ¶ 10; Doc. 38-4). This review revealed that Zuniga filed sixteen administrative
remedies during the relevant time period, i.e., the date he claims Paisa gang members
started harassing him until the day he filed this complaint. (SMF ¶¶ 11, 13; Doc. 23-1, pp.
22-30, Administrative Remedy Generalized Retrieval; Doc. 38-4). Of those sixteen
administrative requests for relief, five pertain to issues raised in the complaint. (SMF ¶ 13;
Doc. 23-1, pp. 22-30, Administrative Remedy Generalized Retrieval; Doc. 38-4).

On November 3, 2015, Zuniga filed Administrative Remedy Number 841063-F1 at FCI-Allenwood alleging that staff did not report an issue to the Special Investigative Services ("SIS"). (SMF ¶ 14; Doc. 23-2, pp. 3-6, Declaration of Matthew Lavelle ("Lavelle Decl.") ¶ 15; Doc. 23-1, pp. 22-30, Administrative Remedy Generalized Retrieval at 6; Doc. 38-4).

The parties dispute the following facts regarding Zuniga's exhaustion of his administrative remedies.

On November 3, 2015, the institution rejected Administrative Remedy Number 841063-F1 as untimely. (SMF ¶ 15; Lavelle Decl. ¶ 15; Administrative Remedy Generalized Retrieval at 6; Doc. 38-4).

On November 9, 2015, Zuniga re-filed Administrative Remedy Number 841063-F2 at FCI-Allenwood alleging staff did not report an issue to SIS. (SMF ¶ 16; Lavelle Decl. ¶ 16; Administrative Remedy Generalized Retrieval at 6; Doc. 38-4). On November 16, 2015, the institution closed Administrative Remedy Number 841063-F2, with a notation that Zuniga was provided an explanation for the closing. (SMF ¶ 17; Lavelle Decl. ¶ 16; Administrative Remedy Generalized Retrieval at 6; Doc. 38-4).

On November 27, 2015, Zuniga appealed the institutional denial of Administrative Remedy Number 841063-F2 to the Northeast Regional Office, designated as Administrative Remedy Number 841063-R1. (SMF ¶ 18; Lavelle Decl. ¶ 17; Administrative Remedy

Generalized Retrieval at 7; Doc. 38-4). On December 1, 2015, the Northeast Regional Office rejected Administrative Remedy Number 841063-R1 because Zuniga failed to provide a copy of the institution request. (SMF ¶ 19; Lavelle Decl. ¶ 17; Administrative Remedy Generalized Retrieval at 7; Doc. 38-4). The Rejection Notice informed Zuniga that he could resubmit Administrative Remedy Number 841063-R1 within ten days of the date the rejection notice. (SMF ¶ 20; Lavelle Decl. ¶ 17; Doc. 38-4).

As part of his exhibits, Zuniga submitted a copy of a Regional Administrative Remedy Appeal for Administrative Remedy 841063-R2 which contains date stamps indicating receipt of the document by the Northeast Regional Office on three different dates – November 27, 2015, December 14, 2015, and January 5, 2016. (SMF ¶ 21; Doc. 3, p. 10; Doc. 38-4). The BOP's SENTRY report does not reflect that the appeal of Administrative Remedy 841063-R2 was received by the Northeast Regional Office on December 14, 2015. (SMF ¶ 22; Lavelle Decl.; Administrative Remedy Generalized Retrieval; Doc. 38-4). Instead, the BOP SENTRY report reflects receipt of a different remedy, Administrative Remedy Number 842807-R1, by the Northeast Regional Office on December 14, 2015, wherein Zuniga claimed he was denied access to a legal call. (SMF ¶ 23; Lavelle Decl.; Administrative Remedy Generalized Retrieval at 9; Doc. 38-4).

Zuniga also submitted Certified Mailing Receipt 7012-1010-0002-2553-3404, which he claims he used to mail Administrative Remedy Number 841063-R1 which was rejected

on December 1, 2015. (SMF ¶ 24; Lavelle Decl. ¶ 17; Administrative Remedy Generalized Retrieval at 7; Doc. 1, p. 4; Doc. 3, p. 12; Doc. 38-4).

Zuniga submitted Certified Mailing Receipt 7013-1710-0000-4238-1983, which he claims he used to mail Administrative Remedy Number 841063-R2 on December 9, 2015, and which was received by the Northeast Regional Office on December 14, 2015, as reflected by a signature dated December 14, 2015. (SMF ¶ 25; Doc. 3, pp. 12, 16; Doc. 38-4).

Zuniga also submitted Certified Mailing Receipt 7013-1710- 0000-4240-9175, which he claims he used to mail Administrative Remedy Number 841063-R2 which he mailed to the Northeast Regional Office on December 23, 2015, but was not received by the Northeast Regional Office until January 5, 2015. (SMF ¶ 26; Lavelle Decl. ¶ 18; Administrative Remedy Generalized Retrieval at 9; Doc. 1, p. 31; Doc. 3, p. 12; Doc. 38-4).

On January 6, 2016, the Regional Office rejected Administrative Remedy Number 841063-R2 as untimely because Zuniga did not resubmit the appeal within ten days of the date of his rejection notice. (SMF ¶ 27; Lavelle Decl. ¶ 18; Doc. 38-4). Zuniga was instructed to resubmit his appeal within ten days with a staff memo on BOP letterhead stating the reason for his untimely filing was not his fault. (SMF ¶ 27; Lavelle Decl. ¶ 18; Administrative Remedy Generalized Retrieval at 9; Doc. 2, p. 18; Doc. 38-4). The parties dispute whether Zuniga complied with this directive. (SMF ¶ 28; Doc. 38-4).

On February 16, 2016, Zuniga filed an appeal with the Central Office, designated as Administrative Remedy Number 841063-A1. (SMF ¶ 28; Lavelle Decl. ¶ 19; Administrative Remedy Generalized Retrieval; Doc. 38-4). On March 28, 2016, the Central Office rejected Administrative Remedy Number 841063-A1 as untimely with instructions to provide the Northeast Regional Office with an explanation of the untimely filing at that level. (SMF ¶ 29; Lavelle Decl. ¶ 19; Administrative Remedy Generalized Retrieval at 9; Doc. 38-4). The parties dispute whether Zuniga re-filed at the Regional Office with the requisite staff memo before filing the instant complaint. (SMF ¶ 30; Lavelle Decl. ¶ 19; Administrative Remedy Generalized Retrieval; Doc. 38-4).

The parties dispute whether, in order to properly resubmit Administrative Remedy Number 841063-R2 to the Northeast Regional Office, Zuniga was required to obtain staff verification to explain that his untimely refiling of the rejected appeal was not his fault. (SMF ¶ 31; Lavelle Decl. ¶ 20; Doc. 38-4; *see also* 28 C.F.R. § 541.15(a)). The parties dispute whether Zuniga should have resubmitted at the Regional Office and then to Central Office with the appropriate staff memo for a final disposition, in order to properly exhaust his administrative remedies. (SMF ¶ 32; Lavelle Decl. ¶ 20; Doc. 38-4; *see also* 28 C.F.R. § 541.15(a)).

## V.    Discussion

Defendants seek an entry of summary judgment on the following grounds: (1) Zuniga

failed to properly exhaust his administrative remedies; (2) Zuniga failed to allege the

personal involvement of Defendant Sudul in a constitutional violation; and, (3) Zuniga's

confinement in the Special Housing Unit does not create unlawful conditions of confinement.

(Doc. 23). The Court will address these claims *seriatim*.

## A.     Exhaustion of Administrative Review

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required

to pursue all avenues of relief available within the prison's grievance system before bringing

a federal civil rights action concerning prison conditions. *See* 42 U.S.C. § 1997e(a); *Booth*

*v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000). Section 1997e(a) establishes the

requirement of administrative exhaustion:

> No action shall be brought with respect to prison conditions under section
> 1983 of this title, or any other Federal law, by a prisoner confined in any jail,
> prison, or other correctional facility until such administrative remedies as are
> available are exhausted.

42 U.S.C. § 1997e(a). Zuniga's *Bivens* claim falls within the ambit of the PLRA. *See*

*Nyhuis v. Reno*, 204 F.3d 65, 68 (3d Cir. 2000) ("[Section] 1997e(a) applies equally to §

1983 actions and to *Bivens* actions.").

The PLRA "exhaustion requirement applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It has

been made clear that the exhaustion requirement is mandatory. *See Williams v. Beard*, 482

F.3d 637, 639 (3d Cir. 2007); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis*, 204 F.3d at 67 (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)). To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. *Spruill*, 372 F.3d at 227-32; *see also Nyhuis*, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *Spruill*, 372 F.3d at 227-32; *see also Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000).

For federal prisoners, such as Zuniga, the BOP has an administrative remedy procedure setting forth the necessary steps to exhaust a grievance pursuant to § 1997e(a). 28 C.F.R. § 542.10(a). Specifically, the BOP has a three-level administrative process through which an inmate can address issues concerning the conditions of his confinement. *See id.* An inmate must first informally present his complaint to staff, and staff is to attempt to resolve the matter. 28 C.F.R. § 542.13(a). If the informal resolution is unsuccessful,

13

then the inmate must execute the appropriate form to bring the matter to the attention of the warden, within twenty calendar days of the date of the incident. 28 C.F.R. § 542.14(a). If the inmate is dissatisfied with the warden's response, he may then appeal to the Regional Director within twenty calendar days. 28 C.F.R. § 542.15(a). The inmate may then appeal to the BOP's Central Office within thirty calendar days, which office is the final administrative appeal level in the BOP. *Id.* No administrative appeal is considered to have been fully exhausted until considered by the BOP's General Counsel. 28 C.F.R. § 542.15(a). If an administrative remedy is rejected for a procedural deficiency, the remedy is returned to the inmate and the BOP provides the inmate with a written notice explaining the reason for the rejection. 28 C.F.R. § 541.17(b).

According to BOP records, Zuniga filed sixteen administrative remedies during the relevant time period, i.e., the date he claims Paisa gang members started harassing him until the day he filed this complaint. (SMF ¶¶ 11, 13; Doc. 23-1, pp. 22-30, Administrative Remedy Generalized Retrieval; Doc. 38-4). Of those sixteen administrative requests for relief, five pertain to issues raised in the complaint. (SMF ¶ 13; Doc. 23-1, pp. 22-30, Administrative Remedy Generalized Retrieval; Doc. 38-4).

The undisputed evidence reflects that Zuniga filed Administrative Remedy 841063-F1 on November 3, 2015 at the institution, six months after the May 2015 incident occurred. (SMF ¶¶ 14, 15; Lavelle Decl. ¶ 15; Administrative Remedy Generalized

14

Retrieval at 6). On November 3, 2015, the institution rejected Administrative Remedy Number 841063-F1 as untimely. (SMF ¶ 15; Lavelle Decl. ¶ 15; Administrative Remedy Generalized Retrieval at 6). Administrative Remedy Number 841063-F1 was patently untimely.

The undisputed evidence further reflects that Zuniga re-filed Administrative Remedy Number 841063-F2 at the institution, and the institution denied the remedy. (SMF ¶¶ 16, 17; Lavelle Decl. ¶ 16; Administrative Remedy Generalized Retrieval at 6). On November 27, 2015, Zuniga appealed the institutional denial of Administrative Remedy Number 841063-F2 to the Northeast Regional Office, designated as Administrative Remedy Number 841063-R1. (SMF ¶ 18; Lavelle Decl. ¶ 17; Administrative Remedy Generalized Retrieval at 7). On December 1, 2015, the Northeast Regional Office rejected Administrative Remedy Number 841063-R1 because Zuniga failed to provide a copy of the institution request. (SMF ¶ 19; Lavelle Decl. ¶ 17; Administrative Remedy Generalized Retrieval at 7). The Rejection Notice informed Zuniga he had ten days from December 1, 2015, or until December 11, 2015, to timely resubmit his appeal of Administrative Remedy Number 841063-R1 to the Regional Office. Zuniga's appeal was logged into the Administrative Remedy Index as received on January 5, 2016, twenty-five days beyond the deadline, and designated as Administrative Remedy Number 841063-R2. On January 6, 2016, the Regional Office rejected Administrative Remedy Number 841063-R2 as untimely, and

instructed Zuniga to resubmit his appeal within ten days with a staff memo. (SMF ¶ 27; Administrative Remedy Generalized Retrieval at 9; Lavelle Decl. ¶ 18). The undisputed evidence reflects that Zuniga never re-filed his appeal of Administrative Remedy Number 841063-R2 at the Regional Office with the requisite staff memo.

The uncontroverted evidence establishes that instead of re-filing at the Regional Office, Zuniga chose to appeal to the Central Office, designated as Administrative Remedy Number 841063-A1. (SMF ¶ 28; Lavelle Decl. ¶ 19; Administrative Remedy Generalized Retrieval). On March 28, 2016, the Central Office rejected Administrative Remedy Number 841063-A1 as untimely and instructed Zuniga to provide the Regional Office with an explanation of the untimely filing. (SMF ¶ 29; Lavelle Decl. ¶ 19; Administrative Remedy Generalized Retrieval at 9). The record reflects that Zuniga chose not to further pursue the remedy. (SMF ¶¶ 30, 31). Thus, Defendants contend that Zuniga failed to properly exhaust his administrative remedies before filing the instant federal action.

Zuniga attempts to refute Defendants' argument by stating that his Regional Administrative Remedy Appeal Number 841063-R2 was timely filed under the prison mailbox rule established in *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). (Doc. 1, p. 5). He asserts that he placed Administrative Remedy 841063-R2 in the mail at FCI-Allenwood three days prior to December 11, 2015, and that it was received by the Regional Office on December 14, 2015. (Doc. 1, p. 4; Doc. 3, pp. 10, 12, 14, 16, 40).

However, this Court previously addressed this issue in *Wall v. Holt*, 2007 WL 89000 (M.D. Pa. 2007), and found that administrative remedy forms are not subject to the prison mailbox rule. In *Wall*, the court found that the prison mailbox rule does not apply to administrative remedy forms because the regulation setting it out is very clear that "[a] prisoner's appeal to a regional director or general counsel is 'considered filed on the date it is logged into the Administrative Remedy Index as received.'" *Wall*, 2007 WL 89000, at *1 (citing 28 C.F.R. § 542.18).

The court in *Wall* held:

> Program Statement 1330.13, the BOP's Administrative Remedy Program notes that the time periods for filing appeals to the regional director and central office are "deliberately long to allow sufficient mail time. Inmates should mail their Appeals promptly after receiving a response to ensure timely receipt." *See* www.bop.gov, P.S. 1330.13, Administrative Remedy Program (effective date 8/6/2002), p. 8. The BOP will consider a late appeal upon a showing of a valid reason for the delay. *See* 28 C.F.R. § 542.15(a).

*Wall*, 2007 WL 89000, at *1. The *Wall* court further noted that petitioner was given an opportunity to submit staff verification that the delay in filing his regional appeal was not his fault, but he did not offer any justification for the delay. *Id.*

Both the Code of Federal Regulations and the BOP's Administrative Remedy Program are unambiguous as to when an administrative remedy is considered filed, i.e., when it is logged into the Administrative Remedy Index as received. The appeal of Administrative Remedy Number 841063-R2 was filed on January 5, 2016, when it was

logged into the Administrative Remedy Index as received, twenty-five days beyond the deadline. On January 6, 2016, the Regional Office rejected Administrative Remedy Number 841063-R2 as untimely, and instructed Zuniga to resubmit his appeal within ten days with a staff memo on BOP letterhead stating the reason for his untimely filing was not his fault. (SMF ¶ 27; Administrative Remedy Generalized Retrieval at 9; Lavelle Decl. ¶ 18). Rather than comply with the directives of the Regional Office, Zuniga chose to file an appeal with the Central Office, designated as Administrative Remedy Number 841063-A1. (SMF ¶ 28; Lavelle Decl. ¶ 19; Administrative Remedy Generalized Retrieval). On March 28, 2016, the Central Office rejected Administrative Remedy Number 841063-A1 as untimely with instructions to provide the Regional Office with an explanation of the untimely filing. (SMF ¶ 29; Lavelle Decl. ¶ 19; Administrative Remedy Generalized Retrieval at 9). The undisputed evidence reflects that Zuniga failed to comply with the directives of the Central Office, and never re-filed at the Regional Office with the required staff memo. (SMF ¶ 30; Lavelle Decl. ¶ 19; Administrative Remedy Generalized Retrieval).

Furthermore, assuming *arguendo* that Zuniga placed Administrative Remedy 841063-R2 in the mail at FCI-Allenwood three days prior to December 11, 2015, and that it was received by the Regional Office on December 14, 2015, the remedy appeal was nonetheless untimely because it was due in the Regional Office by December 11, 2015.

Zuniga failed to present any evidence that prison officials obstructed his attempt to

18

exhaust administrative remedies regarding his claim under the PLRA. Courts have invariably held that affirmative misconduct by prison officials, designed to impede or prevent an inmate's attempts to exhaust, may render administrative remedies unavailable. *See Todd v. Benning*, 173 F. App'x 980, 982-83 (3d Cir. 2006) (expressing approval of the Eighth Circuit's holding in *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) that administrative remedies were not available where prison officials "purportedly prevented prisoner from employing the prison's grievance system"). Examples of affirmative misconduct on the part of prison officials include: (1) threatening a prisoner in an attempt to thwart the prisoner's attempts to exhaust, *see Harcum v. Shaffer*, 2007 WL 4167161, at *5 (E.D. Pa. 2007) (finding administrative remedies unavailable where prison officials threatened plaintiff with "opposition to his future prerelease application, parole, or outside work detail if he did not withdraw his grievance"), (2) refusing to provide appropriate grievance forms in response to inmate inquiries, *see Mitchell v. Horn*, 318 F3d 523, 529 (3d Cir. 2003), (3) advising an inmate that his or her situation does not require a grievance, *see Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002) (finding that administrative remedies were unavailable to plaintiff who had been advised by prison official that he must wait until the end of the prison's investigation before filing a grievance), and (4) failing to file or respond to a prisoner's grievances, *see Camp*, 219 F.3d at 280-81 (finding that administrative remedies were unavailable where prison officials refused to file plaintiff's grievances regarding their

19

coworkers).

Zuniga has not presented any evidence that he was he misled by prison officials, or that some other extraordinary circumstance prevented him from complying with the BOP grievance procedure. Instead, Zuniga sets forth mere conjecture and bare speculation that his administrative remedies were returned "due to the magnitude of [his] complaint." (Doc. 38-4, ¶ 15). Zuniga cannot satisfy his Rule 56 burden with conjecture and supposition. *See Betts v. New Castle Youth Development Center*, 621 F.3d 249, 252 (3d Cir. 2010) (citing *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989); *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Rule 56 requires affirmative evidence in support of a claim. *See* FED. R. CIV. P. 56(e). The record is devoid of any such corroborative evidence. Zuniga has thus failed to meet his burden with respect to the exhaustion of this claim. *See Real v. Dunkle*, 652 F. App'x 84 , 87-88, n. 7 (3d Cir. 2016) (affirming summary judgment where inmate failed to put forth credible evidence in support of his claim that prison officials obstructed him from filing a grievance). Defendants are therefore entitled to an entry of summary judgment in their favor.

## B. Personal Involvement of Defendant Sudul

Defendants argue that Zuniga fails to state a claim against Sudul because there are no factual allegations against him establishing his personal involvement. (Doc. 23, p. 19-

20). The Court agrees.

Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

The caption of the complaint and the preliminary paragraphs of the complaint identify Lieutenant Sudul as a Defendant in this action. (*See* Doc. 1). However, the complaint fails to allege any personal involvement by Defendant Sudul, and the body of the complaint fails to mention Defendant Sudul. (*See id.*). Because Zuniga failed to allege any involvement by Defendant Sudul, the complaint against this Defendant will be dismissed. *See Cross v.*

21

*Losinger*, 2007 WL 954313, *1 (M.D. Pa. 2007) ("[E]ach named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.") (citing *Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir. 1976)).

### C.    Placement in Segregation

#### 1.    *Eighth Amendment Conditions of Confinement Claim*

The Eighth Amendment protects prison inmates from cruel and unusual punishment. *See Farmer*, 511 U.S. at 832. However, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). To assert an Eighth Amendment conditions of confinement claim, a prisoner must satisfy both an objective and subjective test. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Specifically, to establish a claim that a prison official put an inmate at risk of harm, an inmate must show that "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012). The inmate must show that the prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). This standard is subjective, not objective, "meaning that the official must actually be aware of the existence of the excessive risk; it is

22

not sufficient that the official should have been aware." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001). However, only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992).

As to the objective prong, the Court finds that the practice of placing an inmate in the SHU is not sufficiently serious to constitute denial of the minimal civilized measure of life's necessities. *See Keeling v. Barrager*, 2014 WL 1338077 (M.D. Pa. 2014) ("the United States Constitution does not confer any right upon an inmate to any particular custody or security classification") (citing *Moody v. Daggett*, 429 U.S. 78, 88, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976); *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976)).

As to the subjective prong, Zuniga has not established that any Defendants were deliberately indifferent to his health or safety. Notably, Zuniga does not claim that he was denied basic human needs, such as food, clothing, shelter, sanitation, and medical care. Zuniga's confinement in the SHU was admittedly for his protection. (Doc. 1, p. 18). Zuniga requested protective custody which involved administrative procedures of placing him in the SHU pending an investigation. (*Id.* at pp. 15-19.)

Zuniga may have found his temporary conditions of confinement uncomfortable, but they were no different than those afforded to other inmates temporarily housed in the SHU

with the same security classification. *See, e.g., Griffin v. Vaughn*, 112 F.3d 703 (3d Cir. 1997). "To overcome a motion for summary judgment, a plaintiff must come forward with evidence from which it can be inferred that the defendant-officials were . . . knowingly and unreasonably disregarding an objectively intolerable risk of harm." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 259 (3d Cir. 2010) *cert. denied*, 562 U.S. 1272, 131 S.Ct. 1614, 179 L.Ed.2d 502 (2011) (quoting *Beers-Capitol*, 256 F.3d at 132). Zuniga failed to meet his burden with respect to this claim. Consequently, Defendants are entitled to summary judgment as to this claim.

### 2. *Fourteenth Amendment Due Process Claim*

To the extent that Zuniga's placement in the SHU was either administrative or punitive, the relevant inquiry is whether the placement violated his right to due process. The Fourteenth Amendment of the United States Constitution provides, in pertinent part: "No State shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. In order to determine whether a due process violation has occurred, an initial determination must be made that a protected liberty interest exists, and if so, the next step is to define what process is mandated to protect it. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). An inmate does not possess a liberty interest under the Due Process Clause to be classified in the general population of a prison. *Sheehan v. Beyer*, 51 F.3d 1170, 1175 (3d Cir. 1995). Moreover, prison conditions do not impact a protected

liberty interest unless the prison's action imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of "atypical" deprivation of prison life necessary to implicate a liberty interest. *Id.* at 486. "The determination of what is 'atypical and significant' is based upon the range of conditions an inmate would reasonably expect to encounter." *McKeithan v. Jones*, 212 F. App'x 129, 130 (3d Cir. 2007) (citing *Asquith v. Dep't of Corrections*, 186 F.3d 407, 412 (3d Cir. 1999); *Griffin*, 112 F.3d at 706 n. 2). In addition, an inmate placed in administrative custody for a legitimate penological reason could "be required to remain there as long as that need continues." *Griffin*, 112 F.3d at 709.

In *Griffin*, the Third Circuit Court found that confinement of a prisoner in restrictive housing for fifteen months did not implicate a constitutionally protected liberty interest. *Id.* at 706. *See also Thomas v. Rosemeyer*, 199 F. App'x 195 (3d Cir. 2006) (270 days in restrictive housing unit not atypical or significant hardship). The *Griffin* Court further stated:

> Applying the precepts of *Sandin* to the circumstances before us, we conclude that the conditions experienced by Griffin in administrative custody did not impose on him "atypical and significant hardship," that he was thus deprived of no state created liberty interest, and that the failure to give him a hearing prior to his transfer to administrative custody was not a violation of the procedural due process guaranteed by the United States Constitution.

*Griffin*, 112 F.3d at 706.

The *Griffin* Court concluded that, considering the reasons to transfer inmates from general population to administrative custody, such as inmates deemed to be security risks, stays in administrative custody for many months are not uncommon. *Id.* at 708. Thus, the *Griffin* Court held that an inmate's transfer to, and confinement in, administrative custody "did not deprive him of a liberty interest, and that he was not entitled to procedural due process protection." *Id. See also Williams v. Wickiser*, 2007 WL 3125019, at *8 (M.D. Pa. 2007) (five years in Restricted Housing Unit is not atypical and significant hardship); *Francis v. Dodrill*, 2005 WL 2216582, at *3-5 (M.D. Pa. 2005) (inmate's placement in the Special Management Unit does not implicate inmate's liberty interests or due process rights since such confinement does not constitute an atypical and significant hardship).

Zuniga has not implicated a due process claim because any restrictions in the SHU do not impose atypical and significant hardships on Zuniga in relation to the ordinary incidents of prison life. *See Griffin*, 112 F.3d at 706. Accordingly, Defendants are entitled to summary judgment with respect to this claim.

## VI.   Conclusion

Based on the foregoing, Defendants' motion (Doc. 18) for summary judgment will be granted. A separate Order shall issue.

26

Date: March ____, 2018

Robert D. Mariani
United States District Judge